IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AT&T CORP., | : | CIVIL ACTION NO. **4:CV-05-0424** |
| | : | |
| | : | (Magistrate Judge Blewitt) |
| Plaintiff | : | |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| CPB INTERNATIONAL, INC., and | : | |
| JOHN DOES (1-10), | : | |
| | : | |
| Defendants | : | |
| | : | |
| CPB INTERNATIONAL, INC., | : | |
| THIRD PARTY PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| DON'T WORRY, INC. and | : | |
| GORDON MELTZER, individually, | : | |
| | : | |
| Third Party Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

This breach of contract and unjust enrichment action was commenced on February 28,

2005, by Plaintiff AT&T Corp., ("AT&T") against Defendants CPB International, Inc. ("CPB") and

John Does (1-10). (Doc. 1). The Plaintiff invoked the diversity jurisdiction of the Court. 28 U.S.C.

§1332(a). (Doc. 1, p. 2, ¶ 5.). The two stated parties consented to proceed before a Magistrate

Judge pursuant to 28 U.S.C. §636(c)(1), and the District Court entered an Order reassigning this

case to a Magistrate Judge (Doc. 13) for pre-trial and trial purposes.

Defendant CPB was served with the Complaint on or about May 6, 2005. In response to

the Complaint, on May 25, 2005, Defendant CPB filed a Motion for More Definite Statement

pursuant to Fed. R. Civ. P. 12 (e).  (Doc. 6).  On July 29, 2005, we issued an Order denying Defendant CPB's Motion.  (Doc. 16).[1]

On September 2, 2005, Defendant CPB filed its Answer to the Complaint.  (Doc. 18).  On September 8, 2005, Defendant CPB filed a Third Party Complaint against Don't Worry, Inc. ("DWI") and Gordon Meltzer, individually, Third Party Defendants ("TPD").  (Doc. 19).   CPB alleges that it retained DWI and Meltzer to perform consulting services regarding the installation of CPB's telecommunications and computer networks.  (Doc. 19, ¶ 7.).  The Third Party Complaint contains three counts as against both TPD, namely, Count I, breach of implied contract, Count II, negligent misrepresentation, and Count III negligence.  TPD were served with the Third Party Complaint, and they jointly filed a Motion to Dismiss the Third Party Complaint against them. (Doc. 25).  TPD filed an exhibit, Meltzer Affidavit, and their support Brief on January 11 and January 13, 2006, respectively.  (Docs. 27, 28 and  29).  Third Party Plaintiff, CPB, filed a Motion to Strike the Meltzer Affidavit and TPD's support Brief (Doc. 30), and a Brief on January 30, 2006. (Doc. 31). The stated Motions of both parties, CPB and TPD, were briefed and were ripe for disposition. (Docs. 29, 31, 32 & 33).

--------

[1] Since no service was made by Plaintiff AT&T on original Defendants John Does (1-10), we directed Plaintiff AT&T, through discovery, to try and identify the John Doe Defendants, and to file a status report with the Court as to their identities and the attempts made to serve them. On April 19, 2006, Plaintiff filed its status report regarding the John Doe Defendants and indicated that all individuals and entities had been named in this case, and Plaintiff had no reason to believe that it would request an amendment to its pleading to add any unidentified Defendant.  (Doc. 37).  We note that, to date, Plaintiff has not requested to add any additional Defendant in this case, and discovery has now concluded.

On March 21, 2006, we issued a Memorandum and Order in which we granted CPB's Motion to Strike the Affidavit of Meltzer, and we denied TPD's Motion to Dismiss the claims against Meltzer individually.

Specifically, we denied TPD's Motion to Dismiss with respect to Counts II and III of the Third Party Complaint based on the gist of the action doctrine. We also denied the Motion to Dismiss with respect to all claims against Gordon Meltzer individually, without prejudice to re-file a motion after discovery. Further, we granted CPB's Motion to Strike the Affidavit of Meltzer as outside of the pleadings and because it raised a factual dispute. (Doc. 34). Subsequently, on March 31, 2006, TPD, DWI and Meltzer, filed their Answer and Affirmative Defenses to CPB's Third Party Complaint. (Doc. 35). On May 22, 2006, counsel for TPD indicated that they did not concur in the jurisdiction of the undersigned to handle all phases of this case, and requested that a District Court Judge handle the trial of this case. (Doc. 45). The Court entered an Order on May 24, 2006, re-assigning this case to the undersigned only for purposes of pre-trial matters under 28 U.S.C. §636(b)(1). (Doc. 46).

Discovery has now been completed. Presently before the Court are the following ripe Motions: Plaintiff's Summary Judgment Motion (Doc. 55); Defendant CPB's Summary Judgment Motion (Doc. 63); and TPD's Summary Judgment Motion **(Doc. 59)**. We shall consider the Summary Judgment Motion of TPD **(Doc. 59)** in this Report and Recommendation. By a separate Report and Recommendation, we shall address the cross-Summary Judgment Motions of Plaintiff and CPB. (Docs. 55 and 63).

TPD's Summary Judgment Motion is ripe for disposition.  (Docs. 59, 60, 64, 65, 80, 72, 75, 76 and 77).

## II.  Allegations Giving Rise to the Original Underlying Complaint and Third Party Complaint.

We repeat the allegations of the Plaintiff's original Complaint and the Third Party Complaint as stated in our March 31, 2006 Memorandum and Order (Doc. 34), as follows:

> The original Complaint of AT&T contains four counts.  Count One is for Breach of Contract, Count Two is for "Book Account," Count Three is for Promissory Estoppel, and Count Four is for Quantum Merit and Unjust Enrichment.  (Doc. 1, pp. 2-5).

> The following factual allegations are extracted from the Complaint:

> 1.      AT&T sues Defendants for unpaid charges for telecommunications services provided by AT&T to Defendants, pursuant to express and/or implied Agreements between AT&T and Defendants (the "Agreements").
>
> .      .      .      .      .      .      .
>
> 8.      At all times relevant to this action and pursuant to the Agreements, Defendants agreed to pay AT&T for telecommunications services provided by AT&T.  The Agreements make Defendants responsible for the payment of all invoices for telecommunications services rendered to Defendants as well as all other associated charges.

> 9.      AT&T provided Defendants with telecommunications services, which were used by Defendants.

> 10.      On or about March 1, 2003 and April 1, 2003 AT&T billed Defendants $90,140.01 (the "Amount") in accordance with the applicable rates and charges set forth in the Agreements for telecommunications services provided from on or about February 2003 through April 2003 relative to account number 058-050-6907-001.

> 11.      Defendants were obligated to pay AT&T for telecommunications services rendered to Defendants, from AT&T, as well as other applicable charges.

> 12.      Defendants have failed and refused to pay the Amount owed to AT&T.  The amount remains due and owing from Defendants.

4

(Doc. 1, ¶'s' 1., 8.-12.).

Original Plaintiff AT&T, Corp., alleges that it had Agreements with Defendant CPB to provide CPB with telecommunications services from February 2003 to April 2003 on an account and that it was never paid for the services. As stated, CPB's Third Party Complaint against DWI and Meltzer alleges that CPB retained DWI and Meltzer to perform consulting services, including installing CPB's telecommunications and computer networks. CBP alleges that DWI and Meltzer breached an implied contract to provide it with competent and cost-effective telecommunications consulting services, made negligent representations to it regarding its per minute long distance line charge with AT&T, and were negligent by failing to confirm its long distance billing rate with AT&T. (Doc. 19). CPB contends that the gravamen of its Third Party Complaint is that it relied on Meltzer's representation that he secured a $.051 per minute rate from AT&T for its long distance service, but that this rate was not confirmed with AT&T, and CPB was billed at a higher rate of $0.84 per minute. CPB states that its [Third Party] Complaint does not deal with TPD's installation of the computer network for it or its services in doing so. (Doc. 31, p. 6).

## III. Motion for Summary Judgment Standard.

The Court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56, summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. Undisputed Material Facts.

In their Summary Judgment Motion, TPD state that judgment should be entered in their favor under Fed.R.Civ.P. 56 as to all claims asserted against them by CPB in its Third Party Complaint. TPD also move for summary judgment with respect to Meltzer in his individual capacity. (Doc. 59). TPD state that with respect to Count I of the Third Party Complaint, breach of contract, there was no contract between them and CPB regarding telecommunications services and that CPB cannot establish any breach by DWI or Meltzer. As to Counts II & III of the Third Party Complaint, negligent misrepresentation and negligence, TPD state that these state tort claims are barred by Pennsylvania's gist of the action doctrine. As to Meltzer, individually, TPD argue that the Third Party Complaint should be dismissed with prejudice against him since all of his business dealings and work for CPB were performed only through DWI, and not in his individual capacity. TPD state there is no evidence of Meltzer's individual liability in this case.

TPD have filed their SMF in support of their Summary Judgment Motion, and CPB has filed its Counterstatement of Material Facts. (Docs. 60 and 75, respectively). Plaintiff filed an opposition Brief to TPD's Summary Judgment Motion, but not a response to their SMF. (Doc. 77). Both TPD and CPB have filed Exhibits in support of their positions. (Docs. 64, 72 and 76).

Initially, we find that neither TPD's SMF in support of their Summary Judgment Motion nor CPB's Counterstatement of Material Facts (Docs. 60 and 75, respectively), comport with Local Rule 56.1, M.D. Pa. TPD's SMF (Doc. 60) does not include references to the parts of the record that support each of its statements. In fact, it contains no citation to the record with respect to any of its 13 paragraphs. (Doc. 60). We note however, that TPD's SMF and its 13 paragraphs, are basically a re-assertion of 15 paragraphs contained in Doc. 64, Ex. 1, Meltzer's Affidavit. CPB's Counterstatement of Material Facts contains citations to the record with respect to all of its 5 paragraphs (Doc. 75), but it does not respond to the numbered paragraphs set forth in TPD's SMF as required by Local Rule 56.1. Both TPD and CPB are admonished for their failure to follow Local Rule 56.1, which has essentially defeated the purpose of the SMF.

Thus, to the extent that TPD's SMF are not addressed in CPB's Counter-SMF, we shall consider them as unopposed. Therefore, we accept the stated facts contained in TPD's SMF that are supported by the evidence and that are not controverted by CPB's responses thereto, and we will adopt them as our own herein. We will also accept the stated facts contained in CPB's Counterstatement of Material Facts that are supported by the evidence and that are not controverted by TPD's SMF. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (Under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the

facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[2]

We shall accept the following SMF of TPD (Doc. 60):

¶ 1. (*See* Doc. 64, Ex. 1, Meltzer's Affidavit, ¶ 6.);

¶ 2.;

¶ 3., to the extent that Meltzer is an employee and an officer (President) of DWI (*See* Doc. 64, Ex. 1, Meltzer's Affidavit, ¶ 1.), and it is disputed as to whether Meltzer can be held personally liable in this case;

¶ 4., to the extent that CPB retained DWI to re-install their computer network which was necessitated by reason of CPB's move to a new location at Bartonsville, Pennsylvania (*See* Doc. 64, Ex. 1, Meltzer's Affidavit, ¶ 6. and Doc. 76, Ex. B, Paradise Affidavit, ¶ 2. )[3], but CPB disputes the scope of Meltzer's work (Doc. 75, p. 2);

¶ 6. (*See* Doc. 64, Ex. 1, Meltzer's Affidavit, ¶ 6.);

¶ 7. (*See* Doc. 64, Ex. 1, Meltzer's Affidavit, ¶ 7.);

¶ 10. (*See* Doc. 64, Ex. 1, Meltzer's Affidavit, ¶'s 10.-11.);[4]

¶ 12. (*See* Doc. 64, Ex. 1, Meltzer's Affidavit, ¶ 12.); and

¶ 13., except for the legal conclusory sentence that "Neither Meltzer personally, nor DWI,

---

[2]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

[3]Both TPD's SMF and Meltzer's Affidavit misspell Paradise's name as "Paradis." (Docs. 60, and 64, Ex. 1).

[4]Since TPD's ¶ 11. of their SMF (Doc. 60) is simply a paraphrase of CPB's Third Party Complaint, it is not a proper statement of material fact.

ever had any obligation to pay the AT&T bill for services provided to CPB for its sole benefit" (*See* Doc. 64, Ex. 1, Meltzer's Affidavit, ¶'s 13.-15.).

TPD did not respond to CPB's Counterstatement of the Material Facts.  Thus, to the extent that they are supported by the evidence, largely Paradise's Affidavit, and not disputed by Meltzer's Affidavit, we shall accept them as undisputed.  (Docs. 75 and 76, Ex. B).  Also, as stated, CPB has referenced the evidence to support its Counterstatement of the Material Facts.

We accept the following SMF's of CPB's Counterstatement of the Material Facts:

¶ 1.  As stated above, we agree with CPB that there is a factual dispute over the scope of Meltzer's work for it in 2003.  (Doc. 75, p. 2);

¶ 2. (Docs. 76, Ex. C and Doc. 72);

¶ 3.;

¶ 4., second paragraph only; and

¶ 5., to  the extent of Meltzer's March 10, 2003 e-mail to Paradise which stated, in part, as follows:

> I used one line for temporary internet access.  That was line 629-2097.
>
> About the charges on other lines, I have no explanation.
>
> About the rate, I relied on the verbal statement of an ATT rep who told me, on the day I was setting up the temporary access, that the rate between the line 629-2097 and the destination, was 5.1 cents per minute, average, based on what is called a "nailed-up" 24 x 7 analog connection.

(Doc. 76, Ex. E).

## V.  Discussion.

### A.  TPD's Motion for Summary Judgment with Respect to Meltzer

As stated above, this Court has diversity jurisdiction pursuant to  28 U.S.C. § 1332(a)(1), as Plaintiff is a resident of New Jersey and Defendants are Pennsylvania residents.  (Doc. 1, pp. 2-3).  Pennsylvania law applies since this is a diversity action.  *See Marino v. Indus. Crating Co.*, 358 F. 3d 241, 243 (3d Cir. 2004).

TPD's first argument is that Meltzer is entitled to summary judgment as to all claims against him since CPB has not produced any evidence that he acted in his individual capacity.  TPD submitted the Affidavit of Defendant Meltzer, President of DWI, in order to support their Summary Judgment Motion with respect to their argument that Meltzer should be dismissed individually from this case since he avers that he never did any work for CPB in an individual capacity, and that he was never paid by CPB in such capacity.  (Doc. 64, Ex. 1).  All work performed for CPB was by DWI and not Meltzer, he avers, and all invoices were sent to CPB by DWI, and not from Meltzer.  Specifically, Meltzer avers as follows:

> 3.     All of the work done for CPB was done by DWI and all invoices were sent to CPB from DWI.

> 4.     All checks from CPB were made payable directly to DWI.

> 5.     I never did any work for CPB in an individual capacity, and neither CPB nor any representative of CPB ever paid me, in my individual capacity, for work performed for CPB.

> 16.    All of my business dealings in connection with CPB were done through a corporate entity, DWI, in my capacity as a representative of DWI.

(*Id.*, ¶'s 3.-5., 16.).

Thus, Meltzer avers that he had no personal and individual involvement with respect to work DWI performed for CPB, and that the agreement for consulting services was between CPB and DWI.  TPD state that CPB produced no evidence that an agreement existed between CPB and Meltzer.  Further, TPD argue that the evidence shows that no relationship existed between CPB and Meltzer, acting in his individual capacity.   TPD state that since there was no written contract between CPB and Meltzer, there is no contractual basis for a liability claim against him.  (Doc. 80, pp. 3-4).

CPB argues that issues of material fact exist as to the scope to Meltzer's duties he performed for CPB in January and February 2003.  CPB states that Meltzer agreed to supplement the initial scope of work, and that he breached an implied contract in fact to deliver for CPB the $.051 per minute long distance rate he promised it.  (Doc. 76, pp. 2-4).  CPB states that both Meltzer's and Paradise's Affidavits show that they had a mutual agreement to pay Meltzer for his promise to deliver CPB the $.051 per minute rate.  CPB states that Meltzer performed part of his promise by causing the new telecommunications hook up, and that this implies his acceptance and acknowledgment of the agreement with CPB.  (*Id*., pp. 5-6).  CPB also argues that, despite whether Meltzer's conduct was in his individual capacity or as an officer of DWI, he held himself out as a reliable source of information with respect to his computer networking.  As such, he owed CPB a duty of reasonable care, and CPB states that the evidence is disputed as to if he met this standard of care.  CPB thus states that its negligence claim against Meltzer should proceed.  (*Id*., pp. 6-7).  CPB also states that it has produced evidence to hold Meltzer liable with respect to its negligent misrepresentation claim.  CPB argues that Meltzer can also be held liable on its breach of contract

11

claim under the participation theory.  (*Id.*, pp. 8-9).

CPB states that the material facts are disputed as to whether Meltzer was negligent in his communications with AT&T and whether he negligently misrepresented his communications with AT&T to CPB.  (*Id.*, pp. 10-11).  CPB points to the dispute raised between Meltzer's and Paradise's Affidavits.  As CPB states, Paradise's Affidavit indicates that he (Paradise) agreed to the temporary service which, by using AT&T's long distance lines, could dial up CPB's internet service provider ("ISP") only because Meltzer represented that the cost to deliver this service was $.051 per minute. (Doc. 76, Ex. B, ¶'s 6., 8., 9. and 11.).

As the Court stated in *Bouriez v. Carnegie Mellon University*,  2005 WL 3006831, * 22 (W.D.Pa.2005):

> b. Participation Theory
>
> Pennsylvania recognizes individual liability under the 'participation theory'. See *Wicks v. Milzoco Builders, Inc.,* 470 A.2d 86 (Pa.1983); and *Kaites v. Commonwealth of Pennsylvania, Dep't of Envtl. Resources,* 529 A.2d 1148 (Pa.Cmwlth.1987). Under the participation theory, "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir.1978). Further, an officer may be held liable for misfeasance, but not for simple nonfeasance. *Kaites,* 529 A.2d at 1151, citing *Amabile v. Auto Kleen Car Wash,* 376 A.2d 247 (Pa.Super.Ct.1977). The difference between the participation theory and piercing the corporate veil has been explained by the Pennsylvania Supreme Court:
>
>> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his. Under the participation theory, the court imposes

> liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

> *Wicks v. Milzoco Builders, Inc.,* 470 A.2d 86, 89-90 (1983) (footnote omitted). A corporate officer can be held liable for misfeasance, which is the improper performance of an act, but not for mere nonfeasance, which is the omission of an act which a person ought to do. *Wicks,* 470 A.2d at 90.

The Court in *A&F Corp. v. Brown*, 1996 WL 466909, * 5 (E.D. Pa.), stated:

> Unless the corporate officer extends promises in his individual capacity, the participation theory does not apply in the context of an action for breach of contract. *Bala Corp. v. McGlinn,* 144 A. 823 (Pa.1929); *Loeffler v. McShane,* 539 A.2d 876, 879 (Pa.Super.1988). However, under this doctrine, in a tort action, even if the plaintiff has entered into a contractual relationship with the corporation, the corporate officer is not insulated from liability. This is because the basis for tort liability is not the breach of the contract with the corporation but rather the breach of an independent legal obligation to avoid injury to the plaintiff.

*Id.* at 879.

We concur with TPD that CPB does not try and show that Meltzer is liable in his individual capacity for acts performed behind the veil of a sham corporation. (Doc. 80, p. 4). Rather, CPB shows Meltzer's individual liability in this case by establishing his direct participation in the improper performance of his arrangement of a long distance telecommunication rate for CPB with AT&T. We agree with CPB that there are disputes of material fact as whether Meltzer is liable to it for misfeasance, since it has sufficiently shown that he failed to arrange a long distance telecommunication rate that he represented CPB would be charged by AT&T. (Doc. 76, p. 10). We find that CPB has sufficiently shown that Meltzer extended promises to it in his individual

capacity to allow it to proceed against him on its breach of contract claim based on the participation theory. CPB has produced evidence, through Paradise's Affidavit, that Meltzer extended promises in his individual capacity to deliver CPB internet services by using AT&T's long distance lines at a rate of $.051 per minute. We also concur with CPB (*Id.*, pp. 10-11) and find that CPB's Exhibits B, C, D and E (Doc. 76) are sufficient evidence to show Meltzer's individual participation as an actor in the tortious activity it has alleged in its Third Party Complaint.

CPB has shown that Meltzer communicated with an AT&T representative and that he advised Paradise that AT&T could provide long distance telephone charges at the rate of no more than $.051 per minute. (Doc. 76, Ex. B, ¶ 5.). Based on Meltzer's prior work for CPB, Paradise believed that he was familiar with AT&T's pricing polices. Paradise then authorized Meltzer to perform the work. (*Id.*, ¶ 6.). Meltzer, through his company DWI, invoiced CPB for his work, including his work in setting up a temporary internet connection. (*Id.*, ¶ 7.). CPB has produced evidence to create genuine issues of material fact as to whether Meltzer, in his individual capacity, improperly performed the stated acts. Paradise avers that Meltzer failed to advise him and CPB that CPB's long distance account with AT&T was incomplete and that CPB had to make further elections, and as a result, the rate of $.051 per minute Meltzer told CPB it would receive did not occur. (*Id.*, ¶ 8.).

Thus, by CPB's evidence, it has shown, for purposes of overcoming TPD's Summary Judgment Motion, that Meltzer made representations in his individual capacity which induced CPB to allow him to set up temporary internet connection phone line installation work by indicating that CPB would be billed at the $.051 per minute rate, when he did not inform CPB that its billing

14

accounts with AT&T were incomplete, which directly resulted in harm to CPB, *i.e.* it was charged

a long distance rate by AT&T greater than the $.051 per minute rate Meltzer represented to CPB.

The March 10, 2003 e-mail from Meltzer to Paradise, quoted in part above, shows that Meltzer was

personally involved in arranging a long distance telecommunication rate for CPB, and that he made

promises to Paradise that the rate would be $.051 per minute.  Paradise, relying upon Meltzer's

representations, authorized Meltzer to perform the stated work for CPB.  Thus, CPB has shown,

through its evidence, that factual disputes exist as to whether Meltzer improperly performed as he

represented to CPB he did with respect to arranging the $.051 per minute rate with AT&T.  CPB

has produced evidence that it relied upon Meltzer's representation as to the AT&T long distance

rate he obtained for CPB *via* Paradise's Affidavit, and that Meltzer directly participated in arranging

the long distance rate for CPB *via* the March 10, 2003 e-mail.  (Doc. 76, Exs. B and E).  CPB has

shown that disputes of material fact exist as to whether Meltzer improperly performed the stated

acts discussed above, and it does not attempt to hold him personally liable for mere omissions, as

TPD argue.  (Doc. 80, p. 4).  Thus, we shall recommend that TPD's Summary Judgment Motion be

denied with respect to entering judgment in favor of Meltzer in his individual capacity.

> B.  *TPD's Summary Judgment Motion with Respect to all Claims of CPB*

TPD next argue that both DWI and Meltzer are entitled to summary judgment with respect

to all of CPB' claims against them.  (Doc. 65, p. 10 and Doc. 80, p. 5).  They state that CPB has not

produced evidence to support the elements of its claims against them, namely  breach of implied

contract (Count I), negligent misrepresentation (Count II) and negligence (Count III).  (Doc. 19).

They state that the arrangement for obtaining CPB's temporary internet service with AT&T was not

15

part of the agreement between CPB and DWI, that it was CPB's obligation to obtain internet service and not theirs, and that they had not further dealings with CBP or AT&T about CPB's temporary internet service until Paradise requested that Meltzer contact AT&T about the billing problem in March 2003.  (Doc. 65, p. 10 and Doc. 76, Ex. E).

CPB argues that it has produced sufficient evidence to show that factual disputes  exist with respect to all three of its claims against TPD.  (Doc. 76, pp. 4-9).

The Court in *Halstead v. Motorcycle Safety Foundation, Inc.*, 71 F.Supp.2d 455, 458-59 (E.D.Pa.1999), stated:

> It is hornbook law that to make out a cause of action for breach of contract, the plaintiff must plead and prove (1) the existence of a contract to which the plaintiff and defendant were parties; (2) the essential terms of the contract; (3) a breach of the duty imposed by the contract and (4) that damages resulted from the breach. *Electron Energy Corp. v. Short,* 408 Pa.Super. 563, 597 A.2d 175 (1991), *459 aff'd,* 533 Pa. 66, 618 A.2d 395 (1993); *General State Authority v. Coleman Cable & Wire Co.,* 27 Pa.Cmwlth. 385, 365 A.2d 1347 (1976). To be sure, an express contract is formed when the terms of an agreement are declared by the parties. *Department of Environmental Resources v. Winn,* 142 Pa.Cmwlth. 375, 597 A.2d 281, 284, n. 3 (1991), *citing, Central Storage & Transfer Co. v. Kaplan,* 37 Pa.Cmwlth. 105, 389 A.2d 711 (1978), *aff'd,* 487 Pa. 485, 410 A.2d 292 (1979).
>
> [3] [4] Where no such clear declaration exists, however, a contract may be implied--either in fact or in law. A contract implied in fact is an actual contract which arises when parties agree upon the obligation to be incurred, but their intention is not expressed in words and is, instead, inferred from their actions in light of the surrounding circumstances. *Id.* A contract implied in law, or quasi-contract, is a duty imposed by law upon a person who has obtained property or services under circumstances where reason, common sense and justice dictate that payment should be made therefor. *Garofolo v. Commonwealth, Department of Revenue,* 167 Pa.Cmwlth. 672, 648 A.2d 1329, 1334 (1994).

In *Mill Run Assoc. v. Locke Property Co., Inc.*, 282 F. Supp. 2d 278, 293 (E.D. Pa. 2003), the Court stated, "No implied-in-fact contract can be found when the parties have an express agreement dealing with the same subject. *In re Matter of Penn Cent. Transp.,* 831 F.2d 1221, 1229 (3d Cir.1997); *First Wisconsin Trust Co. v. Strausser,* 439 Pa.Super. 192, 653 A.2d 688 (1995)."

As to the breach of implied contract claim, CPB states that Meltzer breached an implied contract in fact to arrange a long distance telecommunication rate for it at $.051 per minute as he represented he obtained from AT&T.  We agree with CPB that there are factual disputes as to whether Meltzer agreed to supplement the scope of the initial work agreed upon between CPB and DWI.

At first, the scope of work Meltzer agreed to perform for CPB was to reinstall CPB's computer network at its new Bartonsville facility.  Paradise's Affidavit clearly establishes this.  (Doc. 76, Ex. B).  Meltzer's Affidavit does not dispute this.  (Doc. 64, Ex. 1).  According to Paradise, when Paradise discovered that Verizon could not offer CPB DSL internet service immediately, and that it could not receive this service until late February 2003 due to insufficient telecommunications hardware at the Bartonsville location, Meltzer told Paradise that he (Meltzer) and Jim McGurran could arrange for CPB to have temporary internet service by installing two local phone lines which could dial CPB's New Jersey internet service provider (ISP), so that CPB could access the internet through its New Jersey ISP.  Paradise avers that Meltzer indicated that he personally contacted a long distance representative of AT&T who told him that AT&T could provide CPB long distance charges at a rate of no more than $.051 per minute on each of the two new phone lines.  Based on Meltzer's representations and his prior computer work for CPB, Paradise thought Meltzer was

17

familiar with AT&T's pricing policies.  Paradise estimated the cost for the long distance dial service for the two lines pursuant to the rate Meltzer told him, and found that it was within CPB's budget. Paradise then authorized Meltzer to perform the work.  (Doc. 76, Ex. B).  Meltzer then established an internet connection for CPB using AT&T's long distance phone lines.

The evidence is undisputed that Meltzer, through DWI, then invoiced CPB on February 21, 2003 in the amount of $2725, which included Meltzer's work in setting up the temporary internet connection for CPB.  (*Id*. and Ex. D).  Meltzer avers that Paradise asked DWI to contact AT&T to hook up a temporary internet connection line for CPB, and he advised Paradise that DWI would contact AT&T.  (Doc. 64, Ex. 1).  However, he avers that DWI would have no involvement with CPB's internet service after making the initial contact with AT&T, and that he advised Paradise that DWI did not hold itself out as a company with telecommunications expertise.

The Court in *Meyers v. Sudfeld*, 2006 WL 401855, * 4 (E.D. Pa.), stated that "A Contract may be express, or may be implied in fact 'when the parties agree upon the obligation to be incurred, but their intention is not expressed in words and is, instead, inferred from their actions in light of the surrounding circumstances.'" (citations omitted).

CPB has sufficiently shown that there was an agreement between Meltzer and Paradise, with the legal effect that Meltzer, through DWI, performed telecommunication work for CPB and established a temporary internet connection for CPB through the installation of two local phone lines to dial up CPB's New Jersey ISP.  CPB's evidence shows that Meltzer contacted AT&T and represented to CPB that AT&T would charge it no more than $.051 per minute for its long distance rate.  CPB, through Paradise, than authorized Meltzer to perform the stated work, and he did.

Meltzer, through DWI, then billed CPB for this work.  CPB has shown that one of the terms of the implied in fact contract was that AT&T's rate would be $.051 per minute, and that TPD failed to fulfill this term since AT&T charged CPB a long distance rate greater than the agreed upon rate Meltzer represented to Paradise that CBP would be charged.  Consequently, CPB has shown that it has suffered damages in that it was billed a much higher rate than it has shown Meltzer indicated it would be charged.  We disagree with TPD that CPB has not produced any evidence to support its breach of contract claim.  (Doc. 80, p. 6).  CPB has shown that Meltzer had a duty to provide the long distance service to it at the $.051 per minute rate with AT&T since Meltzer agreed to perform the work in setting up a temporary internet connection for CPB, since this is the rate he told Paradise he arranged with AT&T, and since, in reliance upon this rate, Paradise determined that it was within CPB's budget and authorized Meltzer to perform the necessary work.  Meltzer then did the work and billed CPB for it.  We disagree with TPD (Doc. 80, p. 7,n. 1) that this alleged duty shows that Meltzer cannot be held liable individually pursuant to the participation theory, since it only shows omissions by him.  As discussed above, we find that the evidence is disputed as to whether Meltzer's agreement to extend the scope of the original work DWI was hired to do for CPB, and his failure to deliver for CPB a long distance rate of .$051 per minute with AT&T as he represented he did, amounts to a failure to perform the acts he agreed to perform.  Simply stated, CPB has shown, through its evidence, that factual disputes exist as to whether Meltzer improperly performed as he represented to CPB he did with respect to arranging for the $.051 per minute rate with AT&T.

Based on the record of this case, we find that CPB has produced enough evidence to

19

support each of the elements of its implied in fact breach of contract claim, and that material facts are disputed as to whether it is entitled to prevail on this claim.

We also agree with CPB that material facts are disputed as to whether it has produced evidence to establish its negligence claim against TPD.  CPB has correctly stated the elements of a negligence claim under Pennsylvania law.  (Doc. 76, pp. 6-7).

In the case of *Stern Family Real Estate Partnership v. Pharmacists Mut. Ins. Co.*, 2007 WL 951603, * 5 (W.D.Pa.2007), the Court stated:

> "The initial element in any negligence cause of action is the first: that the defendant owes a duty of care to the plaintiff." *R.W. v. Manzek,* 585 Pa. 335, 888 A.2d 740, 746 (2005) (citing *Althaus, supra* ). Whether a defendant owes a duty of care to the plaintiff is a question of law reserved to the Court. *Id.* (citations omitted); *Wisniski,* 906 A.2d at 576. Even though a legal or contractual duty of care on the part of the defendant may not exist under Pennsylvania law, the court may nonetheless impose liability on a defendant who assumes a duty of care by his affirmative actions. *See Feld v. Merriam,* 506 Pa. 383, 392, 485 A.2d 742, 746 (1984) (noting that an exception exists to the general rule precluding the imposition of liability in the absence of a preexisting duty "where a party assumes a duty, whether gratuitously or for consideration, and so negligently performs that duty that another suffers damage") (citing *Pascarella v. Kelley,* 378 Pa. 18, 105 A.2d 70 (1954); *Rehder v. Miller,* 35 Pa.Super. 344 (1908)). The exception noted by the Pennsylvania Supreme Court in *Feld* is predicated on the Restatement (2d) Torts § 323 (1965), which has been adopted as an accurate statement of the law in Pennsylvania and provides:
>
>> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Feld,* 506 Pa. at 392-93, 485 A.2d at 746 (citing *Gradel v. Inouye,*
491 Pa. 534, 421 A.2d 674 (1980); *DeJesus v. Liberty Mut. Ins. Co.,* 423
Pa. 198, 223 A.2d 849 (1966)). A plaintiff will satisfy its burden under
Section 323 if it proves one of the two elements-either increased
risk of harm or detrimental reliance. *Feld,* 506 Pa. at 393 n. 4, 485
A.2d at 746 n. 4 (citations omitted); *see also Evans v. Liberty Mut. Ins.
Co.,* 398 F.2d 665, 667 (3d Cir.1968) (applying Pennsylvania law).

Although the Pennsylvania Supreme Court has recognized the
exception as stated in Section 323 of the Restatement, it has applied
Section 323 narrowly. *Feld,* 506 Pa. at 394, 485 A.2d at 747; *see
also Morena v. South Hills Health Sys.,* 501 Pa. 634, 642-44, 462 A.2d
680, 68 (1983) (limiting the extent of defendant-paramedics duty under
Section 323 to the scope of their undertaking). [FN12] For example, the
court in *Feld* held that a landlord could be held liable for providing
inadequate security in an apartment complex but only for his
negligent failure to provide the degree of security that he undertook to
provide. *Feld,* 506 Pa. at 394, 485 A.2d at 747. The plaintiffs in that
case sustained serious injuries in a felonious assault in the parking area,
but were prohibited from arguing that the security measures voluntarily
provided by the landlord were inadequate because their expected benefits
from the security program were unreasonable.

> FN12. The Court takes note of the Pennsylvania
> Supreme Court's statement in *Morena* to the effect that
> Section 323 cannot be used to create a duty where one
> does not exist. 501 Pa. at 642, 462 A.2d at 684. At first
> blush, this statement appears to be in conflict with the
> court's adoption of Section 323 to impose a duty. *Morena*
> was decided one year prior to *Feld;* curiously, however,
> no mention of this statement is made in *Feld.* This
> inconsistency is best explained by one legal commentator:
>
> Taken at face value, this [statement] would seem to render § 323
> and § 324A meaningless, because those sections are
> clearly meant to encompass situations where a
> defendant who might otherwise not have any obligation
> to the plaintiff, undertakes an obligation through his conduct.
> One possible interpretation of this language is that the courts
> reserve the right to find no liability as a matter of law,
> regardless of the defendant's undertaking. However, in those

> cases in which the [Pennsylvania] Supreme Court has raised
> the concept, its point appeared to be that it is the conduct
> of the defendant alone which defines the scope of the
> undertaking, and unless the facts support that a duty was
> undertaken, no liability can attach. In short, § 323 burdens
> the defendant only with the obligations actually undertaken;
> it does not by operation of law create additional obligations
> beyond those that the defendant contemplated.... This point
> was underscored in *Feld*.
>
> 3 West's Pa. Pract., Torts: Law and Advocacy § 1.16 (2006).
> This Court agrees and finds that the Pennsylvania Supreme Court
> meant that under Section 323, a defendant can only be
> burdened with the obligations actually undertaken, otherwise
> the court's adoption of Section 323 would be rendered meaningless.

We have stated above TPD's duty which we find CPB's evidence has shown to exist in this case.   CPB's claims against TPD are based on its evidence that, pursuant to an implied in fact agreement, TPD, through AT&T, provided CPB with telecommunication services and access to the internet, and CPB paid TPD  for said services.   AT&T then provided CPB with telecommunication services, but it charged CPB for those services at a rate greater than Meltzer represented he had arranged with AT&T.   In its Third Party Complaint, CPB alleges that it relied upon Meltzer's representation that he secured a certain rate from AT&T for its long distance services, *i.e.* $.051 per minute, and that its bill from ATT was based on a rate significantly higher, *i.e.*, $0.84 per minute. Paradise's Affidavit sufficiently establishes evidence to support CPB's negligence claim against TPD. Thus, we find that CPB has produced sufficient evidence for the Court to impose liability on TPD, who we find have assumed a duty of care by their affirmative actions in establishing CPB's internet connection *via* AT&T's telecommunications services.   The evidence shows that the conduct of Meltzer expanded the scope of the original work DWI was to perform for CPB to include access

22

to internet service, and that the evidence is sufficient to show that a duty was undertaken to allow

CPB to use AT&T's phone lines at a rate of $.051 per minute.

CPB's evidence has shown that Meltzer agreed to perform work which was  additional to

the original work DWI was hired to do, *i.e.* establish a temporary internet connection for CPB

through AT&T's long distance lines.  As CPB states (Doc. 76, p. 7), Meltzer assumed a duty of care

by agreeing to provide the supplemental work for CPB , by contacting AT&T, and by arranging a

long distance rate for CPB with AT&T at no more than $.051 per minute.   CPB has shown, through

Paradise's Affidavit, that it relied upon the rate Meltzer indicated he obtained from AT&T, and that

it calculated the rate to be within its budgetary limits, and then authorized Meltzer to do the work.

He did the work, and DWI billed CPB for it.  (Doc. 76, Ex. D).  CPB has shown that AT&T charged

it a greater rate than Meltzer's representation, and that his failure to ensure CPB's rate with AT&T

was $.051 per minute, caused CPB injury since it was billed by AT&T at a rate of $.845 per minute.

(Doc. 76, Ex. F).

We also find that CPB has produced evidence to prevail over TPD' Summary Judgment

Motion with respect to his negligent misrepresentation claim.  (Doc. 76, pp. 8-9).  CPB has

produced facts to support the elements of its negligent misrepresentation claim.  Both parties have

stated the elements of a misrepresentation claim under Pennsylvania law. (Doc. 76, p. 8 and Doc.

80, p. 7).  The *Stern* Court, 2007 WL 951603, * 6, stated:

> In *Bilt-Rite Contractors, Inc. v. Architectural Studio,* 581 Pa. 454, 482,
> 866 A.2d 270, 287 (2005), the Pennsylvania Supreme Court
> officially adopted the Restatement (2d) Torts, § 552(1965),
> which sets forth the elements of a cause of action for negligent
> misrepresentation. [FN13] Section 552 of the Restatement provides
> in relevant part:

> FN13. In adopting Section 552 of the Restatement in cases where information is negligently supplied by one in the business of supplying information, the court in *Bilt-Rite* emphasized that it was not supplanting the common law tort of negligent misrepresentation. 581 Pa. at 482, 866 A.2d at 287. Rather, the court stated it was clarifying the contours of the tort of negligent misrepresentation as it relates to those in the business of providing information to others. *Id.* Under Pennsylvania common 'aw, a plaintiff must prove the following elements to establish a claim for negligent misrepresentation:
>
> (1) a misrepresentation of a material fact;
> (2) made under circumstances in which the misrepresenter ought to have known its falsity;
> (3) with an intent to induce another to act on it; and
> (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.
>
> *Bilt-Rite,* 581 Pa. at 466, 866 A.2d at 277 (citing *Gibbs v. Ernst,* 538 Pa. 193, 219, 647 A.2d 882, 890 (1994) (citing Restatement (2d) Torts, § 552)).
>
> One who in the course of his business or profession supplied information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and (b) the harm is suffered (i) by the person or one of the class of persons for whose guidance the information was supplied; and (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct.... Restatement (2d) Torts § 552 (1965).

CPB's evidence shows that Meltzer misrepresented the AT&T long distance rate CPB would be charged with respect to his setting up the temporary internet connection for CPB. CPB claims that Meltzer failed to confirm the rate he represented to Paradise that he obtained from AT&T.

Paradise's Affidavit is sufficient to show that Meltzer knew that CPB was relying upon his representation concerning AT&T's long distance rate, and that the rate of $.051 induced Paradise to authorize Meltzer to perform the stated work.

Under Pennsylvania law, to recover on a claim for negligent misrepresentation, the Court in *Castle v. Crouse*, 2004 WL 257389 at * 7 (E.D. Pa.), stated:

> The elements of a claim for negligent misrepresentation are:
> "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 561 (Pa. 1999).

TPD argue (Doc. 80, p. 7) that CPB cannot show any evidence that they misrepresented a material fact or that they made any representation regarding the rate AT&T would charge CPB. They state that here is no evidence that they were experts in telecommunications and that they should have known about long distance rates. They state that there is no evidence that they intended CPB to rely upon any statements they made. However, we find that CPB has shown that it was Meltzer who made the representations to it with respect to the long distance rate AT&T would charge it, and that Meltzer indicated that he contacted AT&T and assured CPB that the rate would be no more than $.051 per minute. Paradise avers that based on these representations, he computed the $.051 per minute rate would be within CPB's budget, and he authorized Meltzer to do the work. CPB has shown that it relied on Meltzer's representations about the long distance rate and that it agreed to the supplemental work by Meltzer based on that rate since it was within its budget.

25

Finally, TPD (DWI and Meltzer) argue that CPB's tort claims against it, namely Count II, negligent misrepresentation, and Count III, negligence, are barred under the Pennsylvania gist of the action doctrine.  TPD contend that CPB is prevented from re-asserting an ordinary breach of contract claim into tort claims.  TPD state (Doc. 80, p. 8) that CPB's Third Party Complaint does not mention a formal written contract between CPB and TPD.  TPD state that their relationship with CPB arose out of a price quote CPB received from a DWI employee, and thus, their work for CPB arose out of a relationship that was mainly contractual.  (*Id*.).  CPB states that it alleges that Meltzer breached an implied contract in fact to arrange for its long distance rate with AT&T, required for its internet service, at $.051 per minute.  CPB states that there was no written contract on this point. (Doc. 76, p. 4).  CPB's Third Party Complaint alleges a general relationship between the stated parties, with no mention of an express contract.  CPB states that the Affidavits of Meltzer and Paradise show that they had mutual assent to pay Meltzer for his promise to provide CPB the long distance rate of $.051 per minute.  (*Id*., p. 5).  CPB states that Meltzer's failure to use a standard written contract for this work "cannot hide the fact that the parties came to an understanding on this matter." (*Id*.).  Thus, CPB argues that there is no contract expressly relied upon as the basis of its claims in its Third Party Complaint.  CPB argues (Doc. 76, pp. 11-12) that the gist of the action doctrine, which holds that a Plaintiff cannot maintain a cause of action in tort where a separate express contract exists, is applied when an express contractual relationship exists between the parties.  As stated, CPB's evidence show that no express written contract with TPD existed.  Also, the basis of CPB's Complaint against TPD is not over their installation of its telecommunications and computer network system; rather, its basis is CPB's reliance on the representation of Meltzer that

he obtained a certain per minute rate from AT&T for CPB for its long distance service when, in fact, this rate was not confirmed with AT&T.

Plaintiff AT&T also argues that TPD's reliance upon the gist of the action doctrine in this case is misplaced since TPB and CPB did not have an express fully integrated and executed contract delineating their rights and responsibilities.  (Doc. 77).

The issue presented before the Court is whether the negligence and negligent misrepresentation claims of CPB against TPD, which are not based on an express contract but on an implied contract, are precluded by the gist of the action doctrine.

As stated, Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is a New Jersey corporation and Defendants are Pennsylvania residents.  (Doc. 1, ¶'s 2.-4.).[5]  The underlying Complaint of AT&T contains a count for breach of contract, promissory estoppel, quantum merit and unjust enrichment.  All of AT&T's claims against CPB are based on its allegation that pursuant to express and/or implied Agreements, it provided CPB with telecommunication services and CPB promised to pay for said services.  AT&T provided CPB with telecommunication services, and it alleges that CPB has failed to pay for those services at a rate specified in their Agreements.  In its Third Party Complaint, CPB alleges that it relied upon Meltzer's representation that he secured a certain rate from AT&T for its long distance service, *i.e.* $.051 per minute, and that its bill from ATT was based on a rate significantly higher, *i.e.*, $0.84 per minute.  Through its evidence, Paradise's Affidavit, CPB has shown that it relied upon Meltzer's stated representation.

_____

[5]Pennsylvania substantive law is utilized in this diversity case as this Court sits in Pennsylvania.  *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Thus, we shall apply Pennsylvania law with respect to the gist of the action doctrine issue.

We agree with Plaintiff AT&T (Doc. 77, p. 2) that DWI's price quote e-mail (Doc. 64, Ex. 3, Reply to Interrogatory #2, does not constitute a fully integrated and executed contract.  Nor does the invoice DWI sent to CPB establish the existence of a contract.  (Doc. 64, Ex. 2).   As AT&T states, these documents do not state the responsibilities between CPB and DWI, and they do not provide for their respective rights and remedies.  We agree with AT&T (Doc. 77, p. 2), and find that, based on the evidence in this case, detailed above, TPD's argument that CPB's two tort claims against it are barred by the terms of the contract between them is without merit.

Further, we find that CPB's negligent and negligent misrepresentation claims against TPD are not based on an express contract.  CPB has presented sufficient evidence to support its claims that TPD acted negligently and made negligent misrepresentations as to what rate it was required to pay AT&T for its telecommunications services, and that Meltzer represented he obtained from AT&T a certain rate per minute for CPB.

Notwithstanding the fact that the underlying case concerns a contractual dispute between AT&T and CPB over the rate CPB was obliged to pay AT&T for its telecommunications services it provided to CPB as allegedly contained in their Agreements, the evidence which CPB produced shows that its tort claims against TPD center around its reliance on Meltzer's representations over the long distance rate he obtained from AT&T for CPB's telecommunications services.

In the case of *Interwave Technology, Inc. v. Rockwell Automation, Inc.*, 2005 WL 3605272*12, E.D.Pa., 2005, the Court stated as follows:

> The "gist of the action" doctrine, recognized under Pennsylvania law, precludes tort claims based on a party's failure to comply with a contract. Both sides here advance their arguments on this issue by relying on *EToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa.Super.Ct.2002),

28

in which the Superior Court of Pennsylvania addressed this doctrine
and analyzed federal district courts' interpretations of the doctrine in
relation to fraud claims. *Id.* at 15-16. The court in *EToll* determined that,
as applied by federal courts, the gist of the action doctrine bars tort claims:
(1) arising solely from a contract between the parties, (2) where the
duties allegedly breached were created and grounded in the contract itself,
(3) where the liability stems from a contract or (4) where the tort
claim essentially duplicates a breach of contract claim or the success
of which is wholly dependent on the terms of a contract. *Id.* at 19.

TPD argue that the basis of CPB's claims against them is the contractual agreement between

the parties.  As mentioned, they state that their work arose out of a relationship that was primarily

contractual in nature.  (Doc. 80, p. 8).  They argue that their contract with CPB is the only basis for

their respective rights and obligations in this case.  (Doc. 65, pp. 14-15).  Thus, TPD argue that

CPB's Counts II and III sound in tort, but the basis of its claims is really contractual.  TPD argues that

they are entitled to summary judgment with respect to these two tort Counts under the gist of the

action doctrine.  TPD points out that CPB's claims specifically allege a contractual relationship

between themselves and CPB, that the duty they are alleged to have breached is the failure to

perform the services properly, and that this is not collateral to the contract claim but is a direct

restatement of the same claim.  TPD state that this bars CPB's two causes of action which sound

in tort under the gist of the action doctrine.  (*Id.*, p. 14).  TPD rely on *EToll* and argue that any duty

they had to CPB arose from their agreement to perform services for CPB.  (Doc. 65, pp. 12-13).

TPD argue that CPB's Counts II and III only contain allegations relating to conduct that was part of

this agreement to perform services which CPB alleges existed between it and TPD.

Based on the *EToll* case, TPD argue that CPB's tort claims in Counts II and III arise solely

from their agreement to perform services for CPB.  (*Id.*) .  TPD assert that the duties which CPB

alleges that they breached, including their duty to secure a specific rate per minute from AT&T for CPB's long distance service, were created by the alleged implied contract, and that their liability stems from this contract. TPD argue that CPB's tort claims duplicate its breach of implied contract claim it raises in Count I of its Third Party Complaint.

Based on the evidence in this case, we find material factual disputes as to whether the gist of CPB's claims in Counts II and III against TPD are in contract or tort. CPB has sufficiently shown that the gist of its latter two claims against TPD is not based on the implied contract in fact that existed between them. The original work DWI and Meltzer agreed to perform for CPB was expanded, and their duty then included to assist CPB in accessing the internet through its New Jersey ISP *via* the use of AT&T long distance lines. TPD's evidence disputes the scope of the work that they were to perform for CPB. However, we find material factual disputes as to whether or not this work was the subject of a contract between the parties. We agree with AT&T that the e-mail quote from Meltzer to CPB dated December 10, 2002 does not specify the scope of TPD's work to provide CPB with services to allow it to have internet access. Rather, as AT&T states, TPD's duty to assist CPB in accessing the internet was added during their performance of their original services to CPB. Paradise's Affidavit substantiates this fact. AT&T points to the March 14, 2003 DWI invoice #3137 to CPB (Doc. 64, Ex. 2 ) to support its position that genuine issues of material fact exist as to the scope of the work TPD were to perform for CPB. Thus, AT&T states that it is irrational for TPD to argue that CPB's tort claims are barred by the terms of a contract between them.

The Court in *Interwave Technology, Inc. v. Rockwell Automation, Inc.*, 2005 WL 3605272,

* 13 (E.D. Pa.), stated:

> Judicial caution is appropriate because "[o]ften times, without
> further evidence presented during discovery, the court cannot
> determine whether the gist of the claim is in contract or tort."
> *Weber Display & Packaging v. Providence Wash. Ins. Co.,*
> No. 02-7792, 2003 WL 239141, at *3-4 (E.D.Pa. Feb. 10, 2003).
> In *Weber,* the court held that "it would be inappropriate to
> dismiss [plaintiff's] intentional misrepresentation claim at this stage
> of the proceeding, before any discovery is conducted which
> could aid in a determination of the 'gist' of this claim." *Id.*

Now that discovery is completed, we agree with CPB and AT&T that the scope of TPD's

duties and the work they were to perform for CPB are disputed by the evidence.  Thus, since the

evidence is not clear as to the extent of the business relationship between TPD and CPB, and as

to the responsibilities of these  parties, we cannot find that CPB's tort claims against TPD (Counts

II and III) are essentially duplicates of its Count I breach of contract claim.  Consequently, we find

factual disputes as to whether these claims properly sound in contract or tort.  Therefore, we shall

not recommend that TPD's Summary Judgment Motion be granted insofar as it asserts that CPB's

tort claims are barred by the gist of the action doctrine.

**VI.  Recommendation.**

Based on the foregoing, we respectfully recommend that TPD's Motion for Summary Judgment **(Doc. 59),** with respect to all claims asserted against them in CPB's Third Party Complaint, be denied.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 29, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AT&T CORP., | : | CIVIL ACTION NO. **4:CV-05-0424** |
| | : | |
| | : | Magistrate Judge Blewitt |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CPB INTERNATIONAL, INC., and | : | |
| JOHN DOES (1-10), | : | |
| | : | |
| Defendants | : | |
| | : | |
| CPB INTERNATIONAL, INC., | : | |
| THIRD PARTY PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| DON'T WORRY, INC. and | : | |
| GORDON MELTZER, individually, | : | |
| | : | |
| Third Party Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 29, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the

portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**


**Dated: May 29, 2007**